UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ADAM L. RICHARDSON,

                                    Petitioner,

-vs-

JULIE WOLCOTT, SUPERINTENDENT
ORLEANS CORRECTIONAL FACILITY,

                                    Respondent.
_____

DECISION AND ORDER

6: 20-CV-6178 CJS

## INTRODUCTION

Petitioner Adam Richardson ("Richardson" or "Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State County Court, Monroe County, upon his plea of guilty to Robbery in the First Degree, Burglary in the First Degree, and Assault in the Second Degree, for which he was sentenced primarily to ten years in prison and a five-year period of post-release supervision.  Richardson contends that his conviction should be vacated, since he was denied counsel in connection with the Grand Jury proceedings, and since his sentence improperly included an order to pay restitution.  For the reasons explained below, the petition for a writ of habeas corpus is denied.

## BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action.  Briefly, Richardson's convictions arise from an incident on September 15, 2013, in which Richardson, armed with a baseball bat and knife, broke into the home of his girlfriend's ex-husband, waited for the man to return, and then beat, stabbed and robbed him.  The victim, who was familiar with Richardson, identified Richardson as his attacker

to the police, who quickly apprehended Richardson nearby with the victim's blood on his clothing.[1]

Richardson was charged with burglary, assault, and robbery, and arraigned in the early hours of September 16, 2013, by the Honorable Richard Moffett, Town of Hamlin Justice, who, in pertinent part, informed Richardson of the charges, entered a not guilty plea on Richardson's behalf, and ordered Richardson held on $20,000 cash bail or $40,000 bond.  Richardson then asked when he would be provided an attorney.  After some discussion in which Richardson indicated that he did not have a private attorney and was unsure whether he had any ownership interest in his home, Judge Moffett appointed the Monroe County Public Defender to represent Richardson.[2]   More specifically, Judge Moffett's Arraignment Order indicated that Richardson was "apparently indigent or otherwise eligible for representation by the Public Defender's Office," and that the Public Defenders Office was appointed to represent Richardson "unless and until other representation of the defendant has been arranged."   Judge

---

[1] The victim provided police with Richardson's name, physical description, a description of the vehicle he drove, which resulted in Richardson being apprehended approximately an hour after the attack. Sentencing Transcript at pp. 6-15, Motion Hearing Transcript at pp. 87-95; *see also*, Trial Transcript at pp. 14-15, 22 (The victim's blood was found on Richardson's clothing).

[2] *See*, Town Court Arraignment Transcript at pp. 7-8:
Mr. Richardson:  I got asked, asked for a lawyer if the --- I don't know where I was, the police station --- [Police officer:] Sheriff's Office.
Mr. Richardson:  The Sheriff's Office, is it?  I didn't know when I was going to get that, when that's going to happen.
Judge: Well, that's going to happen as far as – and you don't have a personal attorney that you can call?
Mr. Richardson: No.
Judge:  Okay.  And you're saying that you qualify for the Public Defender's Office, but you own a home?
Mr. Richardson:  The home is in my wife's name.  We're married, but we bought the house before we were married.
Judge:  Okay.
Mr. Richardson:  So, I'm going to assume that's, that's still property, still her property.
Judge:  Well, that's going to have to be taken up with the Public Defender.  They, they qualify you or don't qualify you for their services.  Okay?
Mr. Richardson:  [unintelligible] income thing?
Judge:  And if they don't qual--, if you don't qualify for their services we can see that an attorney is appointed for you.  Okay?
Mr. Richardson:  Thank you.

Moffett further informed Richardson that the Public Defender's office would interview him to determine whether he qualified financially for representation by that office at no cost.

Richardson's case was assigned to Assistant Monroe County Public Defender Joshua Stubbe ("Stubbe"), who on September 17, 2013, began communicating with Monroe County Assistant District Attorney Kyle Steinbach ("Steinbach") by email and letter concerning Richardson's charges.[3]  Specifically, on September 17, 2013, Stubbe sent an email to Steinbach, proposing a disposition of time served on a reduced charge of harassment.  However, Steinbach responded and informed Stubbe that he planned to present the matter to the Grand Jury the next day, September 18, 2013, and asked whether Richardson wished to testify before the Grand Jury.  Stubbe indicated that he was unsure, stating, "I'm going to see him [Richardson] tomorrow morning.  When are you putting it in [the Grand Jury]?"

However, to preserve Richardson's rights, Stubbe sent a letter to the District Attorney's Office that same day, indicating that he represented Richardson, and that Richardson wanted to testify before the Grand Jury.  In pertinent part, Stubbe stated: "I am requesting that Adam Richardson be permitted to testify before any vote by the Grand Jury.  This notice will remain in effect unless and until I specifically inform you in writing that Adam Richardson does not intend to testify before the Grand Jury."  Apparently at some later point that same day, a representative of the Public Defender's Office interviewed Richardson at the jail and determined that he did not qualify financially for free representation by the Public Defender.

---

[3] State Court Record at pp. 31-34, SR 047-050.

The following day, September 18, 2013, Stubbe met Richardson at the Monroe County Jail.  Stubbe asked Richardson to explain his version of events leading to the arrest, after which he advised Richardson not to testify before the Grand Jury.[4]  Stubbe also informed Richardson that he did not qualify financially for free representation by the Public Defender, and that if he wanted the Public Defender to continue to represent him, he would be financially liable for the cost.  Richardson informed Stubbe that he did not wish to be represented by the Public Defender and would retain his own attorney. Following that meeting, at approximately noon on September 18, 2013, Stubbe sent an email to ADA Steinbach stating, "Mr. Richardson does not wish to testify at GJ.  Thanks."

Later that day, ADA Steinbach presented the matter to the Grand Jury, which returned a four-count Indictment against Richardson, charging him with Robbery in the First Degree, Burglary in the First Degree (2 counts), and Assault in the Second Degree.

Richardson, who had posted bail shortly after meeting with Stubbe, claims, in this action, that he went to where the Grand Jury was convened and attempted to testify, but was "informed that the proceedings had already concluded."[5]

Approximately one month later, on or about October 17, 2013, Richardson's newly-retained attorney, Lawrence Kasperek ("Kasperek"), appeared in the case.[6]  Kasperek subsequently filed motions on Richardson's behalf, including a motion to dismiss the Indictment on the ground that Richardson had been deprived of counsel in connection with the Grand Jury proceedings, which resulted in a violation of his right under New York Law (New York Criminal Procedure Law §§ 190.50(5) & 190.52) to testify in the Grand

---

[4] *See*, Richardson's Affirmation in Support of Motion to Dismiss Indictment.

[5] However, there is oddly no reference to such an attempt by Richardson in either his motion to dismiss the Indictment or in his direct appeal brief.

[6] The Petition indicates that Richardson retained Kasperek a week after he was indicted, but the first time Kasperek appeared in court with Richardson was a month after the Indictment was returned.

Jury.[7]   Kasperek alluded therein, in motion boilerplate, to the possibility that Richardson could have given "exculpatory" testimony before the Grand Jury, involving, for example, "any alibi or other defense."   However, neither Kasperek nor Richardson has ever identified any particular exculpatory testimony that Richardson could have given in the Grand Jury, nor do the facts of the case suggest any.   The County Court Judge to whom the case was assigned, the Hon. James Piampiano, denied the application, finding that Richardson had not been deprived of counsel, since he had been represented by Stubbe at the relevant time, pursuant to the Order of Judge Moffett.[8]

The matter proceeded to trial, beginning on June 9, 2014, before Judge Piampiano.   If Richardson had been convicted after trial, he faced a minimum sentence of five years and a maximum sentence of 25 years.[9]   However, during jury selection Richardson agreed to plead guilty to the Indictment in exchange for a prison sentence of between seven and ten years.   The plea offer was silent on the topic of restitution.   During the plea colloquy, Richardson agreed, *inter alia*, that he had committed each of the crimes charged in the Indictment.   As part of the plea agreement, Richardson executed a "Waiver of Appeal" "giv[ing] up any and all rights to appeal from the judgment of conviction herein."

On August 7, 2014, Judge Piampiano sentenced Richardson to ten years in prison, with a five-year period of post-release supervision, and ordered Richardson to pay restitution in the amount of $1,466.00, for the victim's medical expenses.[10]   Richardson

---

[7] SR 025-036.  Richardson's motion papers alluded to the fact that he appeared at the initial arraignment in Hamlin Town Court without an attorney, but did not allege any particular statutory or constitutional violation had occurred, or request any relief, related to that fact. Rather, the focus of the motion was the Grand Jury proceeding. *See*, SR 036 ("[T]he Indictment was filed in violation of provisions (a) or (b) of CPL § 190.50(5), and in violation of the defendant's right to counsel under the U.S. and new York State Constitutions it is [sic] therefore invalid  and must be dismissed[.]").

[8] Transcript of appearance on December 5, 2013 at pp 4-5.

[9] State Court Transcripts at p. 125 of 582.

[10] It was evident from Judge Piampiano's comments at sentencing that he gave Richardson the high end of the agreed-upon sentencing range based on the premeditated, prolonged, and extremely violent nature

objected to restitution, arguing that it "was never a consideration regarding the plea," but did not ask to withdraw his plea.  Rather, Richardson merely asked whether the payment of restitution could be postponed until after his release from prison.

Despite having waived his right to appeal, Richardson appealed to the New York State Supreme Court, Appellate Division Fourth Department, asserting two claims: 1) he had been denied the right to counsel "prior to and during the Grand Jury proceedings"; and 2) County Court had erred in imposing restitution that was not part of the plea agreement.

Regarding the alleged deprivation of counsel, a heading in Richardson's appellate brief referred to such a deprivation as having occurred "*prior to* and during the Grand Jury proceedings," and asserted that Richardson's right to counsel attached at the initial arraignment.  However, the appellate brief argued only that the deprivation of counsel occurred in connection with the Grand Jury proceedings: "The Defendant maintains that under the circumstances presented here, he was deprived of the right to counsel at a critical stage of the proceedings *i.e.*, the Grand Jury presentment."[11]  The appeal did not similarly argue that the initial arraignment was a critical stage of the proceeding.  Richardson argued that the appeal waiver did not bar his appeal on this issue, asserting

---

of the attack on the victim. *See, e.g.*, Sentencing Transcript at pp. 24-29.  In that regard, the apparent motive for the attack was that Richardson, who was married to someone else but had started a relationship with the victim's ex-wife, wanted the victim to consent to have the victim's s ex-wife take the couple's children to live in Massachusetts, where Richardson resided.  Richardson drove his vehicle to near the victim's home, then used a bicycle to travel the remaining distance, entered the home through a basement window, and laid in wait for the victim to return home from exchanging custody of the children with his ex-wife.  Richardson, with his face covered, then assaulted the victim with a club and knife for approximately 25 minutes.  Fortuitously, the attack was interrupted when police arrived at the home, after being called by a neighbor who heard the victim's cries through a door that Richardson had left open.  Even then, before fleeing Richardson yelled at the police to "go away," then threatened the victim that he would return and kill him and his children if he cooperated with the police.

[11] SR 010; *see also, id* at 012 ("Adam Richardson respectfully requests that this Honorable Court find that he was deprived of his constitutional right to counsel at a critical stage of the proceedings *i.e.*, grand jury presentment and dismiss the indictment.").

that, "a deprivation of the right to counsel survives both the defendant's guilty plea and an appeal waiver." Appellate Brief at p. 10 (citing *People v. Trapani*, 2018 WL 2726094 (3d Dept. 2018).

Regarding the restitution order, Richardson's appellate brief argued that restitution had not been part of the plea agreement, and that Judge Piampiano had therefore erred in imposing restitution without offering Richardson an opportunity to withdraw his plea. As for relief on that point, Richardson asked the appellate court to vacate his sentence and remit the matter so that the sentencing court could either remove the restitution provision or allow him to withdraw his plea:

> Defendant respectfully requests that this Honorable Court find that the court below erred in enhancing his sentence to include the imposition of restitution, vacate his sentence, and remit the matter to County Court to impose the sentence promised through the plea agreement *or* to afford Defendant the opportunity to withdraw his plea.

SR 013 (emphasis added).[12]

The Appellate Division Fourth Department denied the appeal as to the deprivation-of-counsel claim, granted it as to the restitution order, vacated the restitution order, and otherwise affirmed Richardson's convictions and sentence, stating in pertinent part:

> On appeal from a judgment convicting him upon his plea of guilty of, *inter alia*, robbery in the first degree (Penal Law § 160.15 [3]), defendant contends that he was deprived of his state constitutional right to counsel in connection with his decision to testify before the grand jury. Although defendant's deprivation of counsel contention is not forfeited by his guilty plea it is nevertheless encompassed by his general, unrestricted, and unchallenged waiver of his right to appeal. Notably, unlike in *People v Robbins* (33 AD3d 1127, 1128 [3d Dept 2006]), defendant does not assert that the alleged deprivation of his right to counsel infected the plea bargaining process or otherwise tainted the voluntariness of his guilty plea

---

[12] *See also*, Appellant's Reply Brief, SR 148, 149 (same).

(*see Whitfield*, 52 AD3d at 748; *People v Wolmart*, 5 AD3d 706, 707 [2d Dept 2004], *lv denied* 4 NY3d 750 [2004]).

We decline to follow the Third Department's determination in *People v Trapani* (162 AD3d 1121, 1122 [3d Dept 2018]) that a deprivation of counsel contention survives a valid waiver of the right to appeal irrespective of whether the alleged deprivation infected the defendant's guilty plea.

Defendant's further contention that County Court erred in ordering him to pay restitution because restitution was not part of the plea agreement survives both his guilty plea and his unchallenged waiver of the right to appeal.    Moreover, contrary to the People's contention, defendant preserved his contention for appellate review by objecting to the imposition of restitution on the same ground he now advances. On the merits, it is undisputed that the plea bargain did not include restitution, and the court therefore erred in awarding restitution without affording defendant the opportunity to withdraw his plea. Therefore, as the People now request, we modify the judgment by vacating that part of the sentence awarding restitution.

*People v. Richardson*, 173 A.D.3d 1859, 1860–61, 104 N.Y.S.3d 478 (2019) (numerous citations to New York State court decisions omitted).

Richardson, by his counsel, requested leave to appeal to the New York Court of Appeals.  In that regard, the request at first broadly referred to leave being "sought to appeal all issues" related to Richardson's convictions.  In fact, though, the application was directed only at that section of the Appellate Division's decision which was unfavorable to Richardson, namely, its ruling that the pre-plea deprivation-of-counsel claim was barred by the appeal waiver.  In that regard, Richardson asked the Court of Appeals to "grant leave to appeal to resolve the conflict between the Departments of the Appellate Division as to whether a deprivation of counsel contention survives a valid waiver of the right to appeal irrespective of whether the alleged deprivation infected the defendant's guilty

plea."[13]   In other words, Richardson asked the Court of Appeals to resolve an issue of New York State law.  However, on September 23, 2019, the Court of Appeals denied the application.

On October 20, 2019, Richardson, proceeding *pro se*, submitted to the New York Court of Appeals a purported request for "reargument and reconsideration" of the initial request for leave to appeal.  Richardson's submission, though, raised issues that were not included in the initial request by counsel for leave to appeal.  As mentioned earlier, the initial request to the Court of Appeals was, as would be expected, directed at that section of the Appellate Division's decision which was unfavorable to Richardson, namely, its ruling that the pre-plea deprivation-of-counsel claim was barred by the appeal waiver. On that point, the initial request asked the Court of Appeals to resolve an alleged disagreement between judicial departments as to whether a waiver of appeal applies to alleged pre-plea deprivations of counsel.  Richardson's *pro se* request for "reargument and reconsideration," on the other hand, asked the Court of Appeals to consider two entirely different issues: First, whether the imposition of restitution at sentencing rendered his guilty plea and appeal waiver unknowing, unintelligent and involuntary, making the appeal waiver ineffective; and second, whether the Appellate Division had erred in vacating the restitution order, instead of remanding the matter to County Court, where Richardson would be given *the choice* of either having the restitution order vacated or withdrawing his plea. This latter argument posited, for the first time in the state-court proceedings, that Richardson had the right to withdraw his guilty plea even if County Court was willing to vacate the restitution order.[14]  Indeed, Richardson argued that the Appellate

---

[13] SR 154.

[14] The People's response to this application asserted that Richardson's *pro se* request "raise[d] no additional legal issues from his original application."  This Court respectfully disagrees.  As already

Division had *erred* by vacating the restitution order and restoring to him the benefit of his plea bargain.[15]

Richardson's *pro se* application to the New York Court of Appeals for "reargument and reconsideration" also appears to have raised another claim for the first time, namely, that Richardson was denied counsel at the initial arraignment.  In other words, whereas the counseled submissions to the Appellate Division and Court of Appeals had, up until that point, asserted only that Richardson had been denied counsel at a critical stage of the proceedings, specifically, the Grand Jury, Richardson's *pro se* application asserted that the initial arraignment in Hamlin Town Court was also a critical stage of the proceedings at which he had been denied counsel.[16]

On December 17, 2019, the Court of Appeals denied the "request for reargument and reconsideration" without comment.

On March 24, 2020, Richardson, proceeding *pro se*, filed the subject habeas petition pursuant to 28 U.S.C. § 2254, asserting that his conviction should be vacated for two reasons:  1) "deprivation of the constitutional right to counsel prior to an during the

---

discussed, Richardson's submissions to the Appellate Division argued that *the court* would have the option of either omitting the restitution order or giving Richardson the chance to withdraw his plea.  This shift in Richardson's legal argument appears to have been a new tactical approach to negating the appeal waiver.  That is, it does not appear that Richardson's argument was really aimed at the restitution issue, which the Appellate Division had already resolved in his favor, but, rather, was an attempt to use the restitution error by County Court as a pretext for withdrawing his plea.  Richardson's purported goal in that regard was to pursue the pre-plea-deprivation-of-counsel claim.  However, for various reasons, including that the restitution amount was relatively miniscule and that Richardson has never articulated any actual prejudice from the alleged deprivation of counsel, it seems likely that this maneuvering was actually the result of Richardson's buyer's remorse at having received a sentence at the top of the agreed-upon seven-to-ten-year range, when he expected to receive a shorter sentence based on his otherwise clean record.

[15] *See*, SR 163 ("The Fourth Department's decision . . . to modify the defendant's sentence without affording the defendant the opportunity to consent to the modification of the sentence, or to withdraw his plea, was error.").

[16] *See*, SR 161 (last full paragraph).

grand jury proceedings"; and 2) "sentence should be vacated where County Court erred in imposing restitution that was not included in the terms of the plea agreement."

The Petition's first claim maintains that Richardson had a "Constitutional Right to counsel of choice," which was first denied when Judge Moffet arraigned him without an attorney present, and which was denied again when the Grand Jury indicted him before he had retained Kasperek.  Relatedly, Richardson asserts that Assistant Public Defender Stubbe was never actually his attorney, and that Stubbe therefore had no authority to inform ADA Steinbach that Richardson did not want to testify at the Grand Jury.[17]  The Petition maintains, rather, that the initial arraignment and grand jury presentation should not have taken place until after Richardson had retained an attorney, and that "this deprivation [of counsel] caused irreversible damage to the proceedings and the petitioner's Constitutional right to a fair and just trial."  The Petition, though, does not purport to identify any particular prejudice suffered by Richardson as a result of the alleged deprivation of counsel.  For example, the Petition does not make any proffer of testimony that Richardson would have given in the Grand Jury that might have avoided his indictment.

The petition further asserts that the ruling by the Appellate Division Fourth Department, that Richardson's pre-plea deprivation-of-counsel claim was barred by the appeal waiver, "has caused a clear conflict between the Fourth Department and both the

_____

[17] However, somewhat inconsistently, Richardson relies on the notice that Stubbe had previously sent to the District Attorney, indicating that Richardson was, at that time, requesting the opportunity to testify before the Grand Jury. *See*, ECF No. 1 at p. 19 ("A time notice of the petitioner's intent to appear before the grand jury was sent to the District Attorney on September 17, 2013, and was never withdrawn by the petitioner."). Besides that, "it is settled law that a defense attorney may waive a client's right to testify before the grand jury without consulting the client." *Peterson v. New York*, No. 06CIV.3369(WHP)(FM), 2009 WL 935669, at *14 (S.D.N.Y. Apr. 7, 2009) (citing, in the context of an ineffective assistance of counsel claim, *Williams v. Ricks*, No. 02 Civ. 2131(RCC)(RLE), 2004 WL 1886028, at *7 (S.D.N.Y. Aug. 24, 2004) (collecting cases)).

Second and Third Departments in New York State, therein causing a procedural miscarriage of justice to have occurred within the meaning of the 14th Amendment to the United States Constitution and New York State Constitution."

The Petition's second claim contends that Richardson's appeal waiver should not have been enforced, since the imposition of restitution at sentencing, which was not part of the plea agreement, rendered his guilty plea unknowing and unintelligent. This, according to the Petition, "infected the proceedings, tainted the voluntariness of the petitioner's guilty plea, and nullified the waiver of the right to appeal." Richardson further contends that his rights were violated when County Court improperly ordered restitution without offering him an opportunity to withdraw his guilty plea (even though the Appellate Division vacated that aspect of the sentence).

On April 9, 2021, Respondent filed an Answer and Memorandum of Law opposing the Petition. In that regard, Respondent summarizes her arguments as follows:

> Petitioner was not denied counsel because counsel was appointed at his initial arraignment, and counsel consulted with petitioner during the period preceding his indictment. Petitioner's counsel-of-choice claim is unexhausted and procedurally defaulted, but it is meritless, as well, because petitioner was never denied the opportunity to obtain counsel of his choosing. Petitioner's restitution-related claims are unexhausted and procedurally defaulted; they also lack merit because the Appellate Division gave petitioner the benefit of his plea bargain when it vacated the erroneous restitution order. Moreover, the erroneous imposition of restitution did not invalidate petitioner's knowing and voluntary guilty plea, and there is no basis to vacate petitioner's sentence.

ECF No. 15 at pp. 1-2.

More specifically, regarding the alleged failure to exhaust the deprivation-of-counsel claim, Respondent points out that Richardson's appeal/motion for leave to appeal to the New York Court of Appeals focused on the disagreement between the Third and

Fourth Judicial Departments regarding the effect of his appeal waiver under New York law, and not on any alleged violation of his federal constitutional rights.   As for the merits of the claim, Respondent indicates that the period about which Richardson complains was not a "critical stage of the proceedings," and that Richardson was represented by Stubbe at that time in any event.   Respondent indicates that insofar as Richardson now contends that he told Stubbe that he wanted to testify at the Grand Jury, such assertion is unsupported and simply not credible, as well as being contrary to the finding made by County Court.[18]   Respondent also points out that Richardson's assertion that Stubbe never represented him is inconsistent with his reliance on the notice sent by Stubbe to preserve his right to testify before the Grand Jury.   Additionally, Respondent maintains that Richardson has not identified any prejudice from the alleged deprivation of counsel.

Regarding the alleged constitutional violation flowing from Judge Piampiano's improper-and-subsequently-vacated restitution order, Respondent contends, first, that Richardson never exhausted the claim that the imposition of restitution invalidated his plea, since he did not make that specific argument to either the Appellate Division or the Court of Appeals.   Further, Respondent contends that Richardson cannot show that County Court's erroneous imposition of restitution at sentencing negated the knowing, intelligent and voluntary nature of his appeal waiver in any event.   Alternatively, Respondent asserts that the claim also lacks merit since Richardson argued to the Appellate Division that *either* the restitution award should be vacated *or* he should be allowed to withdraw his plea, and the court granted him the first type of relief, restoring to him the benefit of his plea bargain.

---

[18] Again, County Court found that Stubbe represented Richardson at the relevant time, since Judge Moffett had assigned the Public Defender to represent Richardson until such time as Richardson retained new counsel, and no new counsel had appeared for Richardson.

In response to Respondent's Answer and Opposition, Richardson filed, first, a motion for a 30-day extension of time to file a reply/traverse (ECF No. 19).   Then, Richardson filed a Motion to Compel (ECF No. 20), made pursuant to Fed.R.Civ.P. 37 and 28 U.S.C. § 2254 Rule 6, indicating that Richardson had been unable to listen to an audio compact disk ("CD") of of his initial arraignment in Hamlin Town Court before Judge Moffett that had been provided to him by Respondent, since it had been "deemed faulty and unreadable by [prison] facility administrative staff."   Consequently, the motion demanded that Respondent provide him with a new recording.

Having received no response from the Court by the filing deadline for his reply, Richardson filed, ten days late, a "Traverse" to Respondent's papers (ECF No. 21), consisting of 36 pages and 76 additional pages of exhibits.   In general, the reply/traverse reiterates the contentions contained in the Petition.   For example, Richardson disputes the notion that Stubbe ever represented him or had any authority to tell the District Attorney that Richardson did not want to testify before the Grand Jury.   Richardson further asserts that he was prejudiced, since the initial arraignment and Grand Jury proceedings were conducted prior to him having an opportunity to retain counsel.   In that regard, Richardson implies, for example, that the outcome of the Grand Jury proceedings would have been different if he had testified, though he does not explain how or why, and simultaneously indicates that he "has never disputed his charges."[19]   Additionally, Richardson contends that, despite the fact that the Appellate Division vacated the restitution portion of the sentence, he did not receive "the benefit of his plea bargain"

---

[19] ECF No. 21 at pp. 7, 15-16.

since by the time the restitution order was vacated, the restitution amount had already been deducted from his prison inmate account.

Richardson subsequently filed a motion (ECF No. 22) purporting to demand the following relief: An order granting summary judgment; an order holding Respondent in contempt; an order striking Respondent's response to the Petition; and an order "preventing Respondent from opposing Petitioner's designated claims."  The gist of the application is that Richardson maintains a state court record (the Hamlin Town Court arraignment recording/transcript) was not provided to him in accordance with this Court's scheduling order.  In particular, Richardson indicates that he was "forced" to prepare his traverse without the benefit of the audio CD of the initial arraignment in Hamlin Town Court, since a usable copy of the recording had not been provided to him in a timely manner.

In response to these submissions by Richardson, Respondent filed a certificate of service (ECF No. 23) indicating that a transcript of the Hamlin Town Court arraignment had, subsequent to service of Richardson's Traverse, already been served on Richardson.  Richardson subsequently wrote to the Court, agreeing that he had been provided with the transcript, but complaining that the transcript was not certified.

On March 28, 2022, the Court issued an Order (ECF No. 26) directing Respondent to "respond to Petitioner's motions and specifically address Petitioner's contentions that he has not been provided with a copy of the subject audio recording in a format usable by him (taking into account that Petitioner is a prison inmate) or a properly certified transcript thereof."

On April 27, 2022, Respondent filed a letter response (ECF No. 27), requesting that the Court deny Richardson's motions.  In that regard, Respondent points out that the

applications all essentially involve the Hamlin Town Court arraignment, at which there had been no court reporter.  Respondent indicates that after Richardson claimed he could not utilize the audio CD of the arraignment, an uncertified transcript was provided to him, and that a certified transcript was being prepared and would be given to Richardson.  Respondent indicates, however, that Richardson is not entitled to the relief he is demanding since, for example, "Habeas Rule 5(c), which identifies the transcripts respondent must provide when responding to a habeas petition, does not state that the transcripts must be certified."  In sum, Respondent indicates that there is neither a legal basis nor a factual basis to grant Richardson's motions.

On May 12, 2022, Richardson responded (ECF No. 28), arguing that Respondent's submission (ECF No. 27) was procedurally improper.   Richardson also reiterates that he is not disputing that he in fact committed the crimes for which he now stands convicted:

> The reality of the matter is, I have never once challenged my charges of conviction in any petition to any court.  I acknowledged my mistakes and have served 99% of my time for them.  What I have challenged are the errors made in the justice system that is supposed to uphold the law[.]

ECF No. 28 at p. 4.

On May 19, 2022, Respondent filed a certified transcript of the Hamlin Town Court arraignment, along with proof of service on Petitioner (ECF No. 29).[20]

Finally, on June 6, 2022, Richardson filed a "Further Reply/Response" (ECF No. 31), essentially arguing that Responded submitted the certified arraignment transcript

---

[20] The relevant portion of the transcript is very brief, and is largely set forth above in footnote 2.  The remainder of the transcript consist of an off-the-record personal discussion between Judge Moffett and a police officer, that took place while Petitioner was, at his request, in a separate room making telephone calls.

late, and that the Court should therefore grant Richardson's motion (ECF No. 22) demanding summary judgment.

The Court has considered the arguments of the parties and the entire record, and finds, for the reasons discussed below, that, except for Richardson's motion for an extension of time to file his reply, which the Court grants *nunc pro tunc*, Richardson's motions and habeas petition must be denied.

## DISCUSSION

Petitioner's *Pro Se* Status

Since Petitioner is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Evidentiary Hearing Not Required

Pursuant to Rule 8 of Rules Governing Habeas Corpus cases under Section 2254 in the United States District Courts and upon review of the answer, transcript and record, the Court determines that an evidentiary hearing is not required.

Richardson's Motions

As a preliminary matter, Richardson's motion for an extension of time to file his reply-traverse (ECF No. 19) is granted *nunc pro tunc*, and his submissions are deemed timely.  However, Richardson's remaining motions (ECF Nos. 20 & 22) are denied.  In that regard, Richardson maintains, *inter alia*, that he is entitled to judgment, since Respondent violated Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts by failing to provide him with a usable recording and/or verified

transcript of the initial arraignment in Hamlin Town Court.[21]  The Court, though, finds that none of Richardson's complaints about these matters warrant the imposition of sanctions against Respondent, let alone the award of summary judgment on Richardson's habeas petition.[22]  Consequently, Richardson's motion for an extension of time (ECF No. 19) is granted *nunc pro tunc*, but his other motions (ECF Nos. 20 & 22) lack merit and are denied.

Section 2254 Principles

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles applicable to such a claim are well settled.

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and interpreted by the Supreme Court, 28 U.S.C. § 2254—the statutory provision authorizing federal courts to provide habeas corpus relief to prisoners in state custody—is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624

---

[21] In pertinent part, Rule 5(c) states: "The answer must also indicate what transcripts (of pretrial, trial, sentencing, or post-conviction proceedings) are available, when they can be furnished, and what proceedings have been recorded but not transcribed.  The respondent must attach to the answer parts of the transcript that the respondent considers relevant.  The judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished. If a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence."

[22] Despite the emphasis placed on it by Richardson, the certified transcript of the Hamlin Town Court arraignment essentially shows only that Richardson was not represented by counsel, a point which was never disputed.  On the other hand, the transcript refutes various factual assertions made by Richardson in this action.  For example, Richardson has asserted that he repeatedly requested an attorney during the arraignment: "At the appearance in Hamlin Town Court for the initial arraignment on September 16, 2013, the petitioner requested an attorney multiple times and was denied by Judge Moffett[.]"   However, that assertion is incorrect, since the only reference by Richardson to counsel during the arraignment was when he indicated that he had asked the police for counsel at the police station, and then asked Judge Moffet when an attorney would be provided, to which Judge Moffett indicated that Richardson would be meeting with a representative of the Public Defender's office later that day.  Additionally, Richardson has asserted in this proceeding that he asked Judge Moffett to adjourn the arraignment to allow him to retain an attorney, and that Judge Moffett refused: "The Court should have adjourned the arraignment to afford the petitioner the opportunity to retain counsel as requested."   However, that contention is also refuted by the transcript, which indicates that Richardson never asked for the arraignment to be adjourned, for any reason.  Indeed, the transcript further shows that, rather than demanding at the arraignment that he be allowed to retain an attorney "of his choice," as he now claims, Richardson indicated to Judge Moffett that he needed the court to provide him an attorney (since he could not afford one), which is why Judge Moffett appointed the Public Defender.

> (2011). A number of requirements and doctrines . . .  ensure the centrality of the state courts in this arena. First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance. *See id*. (citing 28 U.S.C. § 2254(b)). Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions. *See generally Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). If the state court denies a federal claim on the merits, then the provisions of § 2254(d) come into play and prohibit federal habeas relief unless the state court's decision was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1)-(2). Finally, when conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim. *See Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388, 1398–99, 179 L.Ed.2d 557 (2011).

*Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014).  As just mentioned, regarding claims that were decided on the merits by state courts,

> a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

> A state court decision is contrary to clearly established Federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's result.

> A state court decision involves an unreasonable application of clearly established Federal law when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case.  To meet that standard, the state court's decision must be

> so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  It is well established in this circuit that the objectively unreasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11, 2018) (Koeltl, J.) (citations and internal quotation marks omitted).

When applying these standards,

> [t]he state court's findings of fact are presumed to be correct unless the petitioner can rebut this presumption by clear and convincing evidence[,] [28 U.S.C.] § 2254(e)(1)[, and] [t]he petitioner bears the ultimate burden of proving by a preponderance of the evidence that his [federal] constitutional rights have been violated. *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir.1997).

*Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012), as amended (Aug. 9, 2012).

Federal courts deciding habeas petitions do not serve as appellate courts to review state court decisions of state law claims. Their purpose instead is to review whether the circumstances surrounding the petitioner's detention 'violate fundamental liberties of the person, safeguarded against state action by the Federal Constitution.' *Townsend v. Sain*, 372 U.S. 293, 311–312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).  Consequently, "[a] claim that a state conviction was obtained in violation of state law is not cognizable in the federal court." *Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) and *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998)); *see also, Guerrero v. LaManna*, 325 F. Supp. 3d 476, 483 (S.D.N.Y. 2018) ("The role of federal courts reviewing habeas petitions is not to re-examine the determinations of state courts on state law issues, but only to examine federal constitutional or statutory claims. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*,

502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  Habeas petitions may not simply repackage state law claims, which have previously been found to be meritless, in order to obtain review. *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004)."); *but see, Pressley v. Rich*, No. 20-CV-6428-FPG, 2022 WL 2306974, at *6 (W.D.N.Y. June 27, 2022) ("This Court does have the authority to 'correct a misapplication of state law' if 'such misapplication violates the Constitution, laws, or treaties of the United States.' *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).") (Observing, however, that the alleged federal violation must still be raised and exhausted in the state courts before being raised in the § 2254 habeas proceeding).

<u>Deprivation of Counsel</u>

Richardson contends that he is entitled to a writ of habeas corpus because he was deprived of counsel at his initial arraignment and in connection with his decision whether to testify before the Grand Jury, in violation of his Sixth Amendment rights.  The Appellate Division Fourth Department did not reach the merits of Richardson's deprivation of counsel argument, finding that it was "encompassed by his general, unrestricted and unchallenged waiver of his right to appeal," and that the alleged deprivation of counsel had not "infected the plea-bargaining process or otherwise tainted the voluntariness of his guilty plea."

The Appellate Division's ruling[23] on that point was a denial of Richardson's deprivation-of-counsel claim on an adequate and independent state-law ground. *See, Weston v. Capra*, No. 18CIV05770PMHJCM, 2022 WL 1811161, at *18 (S.D.N.Y. Apr.

---

[23] The Appellate Division's decision is the focus of this Court's inquiry since it was the last reasoned state court ruling on the merits of Richardson's claim. *See, McCray v. Capra*, 45 F.4th 634, 640 (2d Cir. 2022) ("On a habeas petition under section 2254, we review the "last reasoned decision" by the state court[.]") (citation omitted), *cert. denied*, 214 L. Ed. 2d 369, 143 S. Ct. 624 (2023)

13, 2022) ("Firmly established New York state law . . . recognizes the validity of waivers of appeal, and federal courts have thus found valid waivers of the right to appeal to constitute an independent and adequate state-law ground that precludes review.") (citations and internal quotation marks omitted), report and recommendation adopted, No. 18-CV-05770 (PMH), 2022 WL 2914506 (S.D.N.Y. July 25, 2022), appeal dismissed, No. 22-1688, 2022 WL 18207319 (2d Cir. Dec. 15, 2022), *cert. denied*, 215 L. Ed. 2d 78, 143 S. Ct. 831 (2023); *see also, Irvis v. Haggat*, No. 9:12-CV-1538 FJS/TWD, 2015 WL 6737031, at *19 (N.D.N.Y. Nov. 3, 2015) ("It is well-settled in New York that a waiver of appeal provides an independent and adequate procedural bar to habeas relief.") (collecting cases).

Consequently, this Court cannot consider Richardson's deprivation-of-counsel claim unless he can show that an exception to the adequate-and-independent-state-law-ground rule applies:

> A federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment," *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," *id*. at 750. A claim is procedurally defaulted when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005). And it is well-settled that New York's law "allowing defendants to waive their right to appeal as part of a plea agreement, as long as the waiver is made voluntarily and is knowing and intelligent, is [such] an adequate and independent state ground that bars habeas review." *Burvick v. Brown*, No. 10-CV-5597 (JFB), 2013 WL 3441176, at *6 (E.D.N.Y. July 9, 2013)

*Martinez v. Uhler*, No. 19CV6928RASLC, 2022 WL 3996963, at *4 (S.D.N.Y. Sept. 1, 2022) (other citations omitted).

Richardson admits that he is guilty of all counts of the Indictment, and therefore he cannot demonstrate that a fundamental miscarriage of justice will result if this Court does not consider his deprivation-of-counsel claim. *See, Pennington v. Bennett*, 372 F. App'x 144, 146 (2d Cir. 2010) ("Where, as here, a habeas petitioner's claim is procedurally defaulted, a habeas petitioner may avoid such a default ... by showing cause for the default and prejudice, or that failure to consider the claim will result in miscarriage of justice, *i.e.*, the petitioner is actually innocent.  . . .  The fundamental miscarriage of justice exception is extremely rare and should be applied only in the extraordinary cases.  Actual innocence means factual innocence rather than just legal insufficiency[.]") (citations and internal quotation marks omitted).

This leaves only the "cause for the default and prejudice" exception, which Richardson also cannot meet.  In that regard,

> [t]o show cause, he must establish that his waiver of the right to appeal was not knowing and voluntary. *See Guaman*, 2016 WL 901304, at *5; *D'Onofrio,* 2018 WL 6251367, at *12-13.  A wavier is knowing if "the defendant fully understood the potential consequences of the waiver," *United States v. Castillo*, 303 F. App'x 989, 990 (2d Cir. 2008), and it is voluntary "if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally," *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988).

Martinez v. Uhler, No. 19CV6928RASLC, 2022 WL 3996963, at *5 (S.D.N.Y. Sept. 1, 2022); *see also, Gilliam v. Superintendent*, No. 9:13-CV-0788, 2015 WL 114344, at *10 (N.D.N.Y. Jan. 8, 2015) ("Petitioner might be able to establish 'cause' if he could

demonstrate that his guilty plea and related waivers were not knowing, voluntary, and intelligent.").

In the instant action, Richardson does not contend that his plea, including the waiver of appeal, was not knowing, intelligent, and voluntary at the time it was made. Instead, he argues only that the plea was subsequently rendered unknowing, unintelligent and involuntary, when the sentencing court improperly imposed restitution which had not been included in the plea offer.  In certain circumstances, a defendant's guilty plea may be deemed constitutionally defective where he was given incorrect information concerning his sentencing options and he would not have pleaded guilty if he had been given the correct information:

> The "test for determining the [constitutional] validity of guilty pleas ... was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162(1970); *accord, e.g., Kelleher v. Henderson*, 531 F.2d 78, 81 (2d Cir.1976); *Wilson v. McGinnis*, 413 F.3d 196, 198–99 (2d Cir.2005). In assessing the constitutional validity of a state court guilty plea where the defendant has been given sentencing misinformation, the Second Circuit has explained that the test is "whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea." *Williams v. Smith*, 591 F.2d 169, 172 (2d Cir.1979) (citing *Caputo v. Henderson*, 541 F.2d 979 (2d Cir.1976); *Kelleher v. Henderson*, 531 F.2d at 81).

*Larweth v. Conway*, 493 F. Supp. 2d 662, 672–73 (W.D.N.Y. 2007).

> As a practical matter, th[is] two-part [test, set forth in] *Hunter* [*v. Fogg*, 616 F.2d 55, 58 (2d Cir.1980),] is seldom met. In particular, courts have often found that even though a petitioner had been inaccurately informed of the actual sentence facing him, accurate information would not have changed his decision to plead guilty. A petitioner's chances of success at trial, and his understanding of those chances, is an important consideration in making this determination.

*Joyner v. Vacco*, No. 97 CIV. 7047 (DLC), 2000 WL 282901, at *7 (S.D.N.Y. Mar. 15, 2000), aff'd, 23 F. App'x 25 (2d Cir. 2001); *see also, Mapp v. Phillip*, No. 04-CV-1889 JG, 2005 WL 1541044, at *7 (E.D.N.Y. June 29, 2005) ("Other factors that a court considers when determining the voluntariness of a guilty plea where a defendant is given sentencing misinformation is the strength of the state's case, and the disparity between what a defendant was told his sentence exposure would be and the actual sentence given.") (citations omitted).

In the instant case, Richardson does *not* maintain that he would not have pleaded guilty if he had known that the sentencing court would impose restitution.[24]  Instead, he asserts only that the imposition of the restitution order *necessarily* rendered his plea and appeal waiver involuntary, unknowing and unintelligent.  However, as just discussed, that is not an accurate statement of the law.  Consequently, Richardson has not shown that County Court's imposition of restitution rendered his appeal waiver Constitutionally invalid.

Besides that, the circumstances here strongly suggest that even if Richardson had known that County Court would impose a restitution order, it would not have affected his decision to plead guilty.  In that regard, the obvious focus of the plea agreement in this case was the length of the prison sentence.  Richardson, who could have received a sentence of between five and twenty-five years if convicted after trial, evidently recognized that the evidence against him was strong, and therefore agreed to plead guilty in order to cap his potential exposure at ten years in prison.  There is no indication that

---

[24] Rather, the Petition states only the following, in pertinent part: "[W]hen the petitioner agreed to waive his right to appeal he had no reason to suspect that he would receive a sentence in excess of the maximum that had been negotiated.  The petitioner could not have knowingly and intelligently waived his right to appeal the Court's decision to not abide by the original promise." ECF No. 1 at p. 5.

financial considerations, such as potential fines or restitution, were a factor, let alone a significant factor, in Richardson's decision to plead guilty.  Certainly, Richardson was not induced to plead guilty based on any affirmative representation that restitution would *not* be imposed.

Moreover, the restitution amount was relatively miniscule ($1,466), meaning that the difference between the sentence that Richardson thought he would receive and the sentence that he actually received is small.  The Court does not think it likely that Richardson, or any reasonable person in his situation, would have gone to trial and risked an additional fifteen years of prison just to avoid paying $1,466 in restitution.[25]  The Court's belief on this point is reinforced by the fact that at sentencing, after being informed that County Court would order restitution in the amount of $1,466, Richardson did not give any contemporaneous indication that he wanted to withdraw his plea.  Rather, Richardson's counsel merely asked that County Court delay the collection of restitution until after Richardson's prison sentence was completed, which the court denied.

Consequently, the Court finds that Richardson has not demonstrated "cause" for the procedural default by showing that his plea waiver was rendered unconstitutional by the imposition of restitution. See, *Guaman v. Racette*, No. 14CV5160 (CS)(LMS), 2016 WL 901304, at *5 (S.D.N.Y. Feb. 5, 2016) ("Petitioner cannot demonstrate cause for the

---

[25] *Cf., Larweth v. Conway*, 493 F. Supp. 2d 662, 673 (W.D.N.Y. 2007) ("[T]he Court cannot find that had Larweth been provided with "accurate information" about the post-release supervision it would have made any difference whatever in his decision to plead guilty.  . . .  In particular, the Court notes that Larweth faced a potential twenty-five-year sentence under the class B felony charges in the original indictment  . . .  Moreover, given the strength of the prosecution's evidence against petitioner and the brutality of his assault on the victim, Larweth was not likely to prevail at a jury trial. In light of these circumstances, the Court cannot believe that Larweth would have rejected the plea deal offered by the prosecution. The Court is even more incredulous that he would have chosen to take his case to trial had he been told that his 'actual sentence' would include a period of post-release supervision.").

default since, as noted above, the record shows that his waiver of the right to appeal was knowing and voluntary."). The Court therefore need not reach the prejudice prong.

In sum, the Court does not reach the merits of Richardson's first claim, since it was denied on an adequate and independent state-law ground, namely, his waiver of appeal, and he has not shown that any exception to the procedural default rule applies.[26] *See, King v. Artus*, 259 F. App'x 346, 347 (2d Cir. 2008) ("Since the New York State Supreme Court, Appellate Division 'has expressly relied on a procedural default as an independent and adequate state ground' for its judgment, *Green v. Travis*, 414 F.3d 288, 294 (2d Cir.2005), and King has not demonstrated 'cause for the default and actual prejudice as a result of the alleged violation of federal law, or ... that failure to consider the claims will result in a fundamental miscarriage of justice,' *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), federal habeas review is barred.").

Richardson's Alleged Right to Withdraw His Plea

Richardson's remaining claim is that his "sentence should be vacated where County Court erred in imposing restitution that was not included in the terms of the plea agreement." In that regard, Richardson essentially maintains that the sentencing error by County Court (imposing restitution that was not part of the plea agreement) violated his federal constitutional rights, requiring a remand to County Court, where he should have the right to either accept a correction of his sentence or withdraw his plea. (Although, since Richardson has continued to pursue this claim even after the Appellate Division

---

[26] Even if the Court were to reach the merits, it would deny the claim. Specifically, insofar as Richardson is claiming that he was denied counsel at the initial arraignment and/or was denied his "counsel of choice," the claim is unexhausted and procedurally defaulted, and he has not shown that any exception applies. Nor has he shown that the arraignment was a critical stage of the proceeding or that he suffered any prejudice related thereto. Insofar as Richardson claims that he was denied counsel in connection with the Grand Jury proceeding, the record indicates that he was represented by counsel, as County Court determined, and, in any event, he has not demonstrated prejudice.

vacated the restitution order, it seems fairly obvious that what he really wants is to withdraw his plea, presumably because he is dissatisfied with the term of imprisonment imposed by Judge Piampiano.[27])   Richardson contends, therefore, that the Appellate Division erred when it vacated the restitution provision of his sentence, without remanding the matter to County Court and without giving him the opportunity to withdraw his plea. Alternatively, Richardson argues that the Appellate Division did not actually correct his sentence or give him the benefit of his plea bargain, since, by the time the Appellate Division made its ruling, the restitution amount had already been taken from his inmate account.

However, Richardson is barred from raising these arguments since they are unexhausted and procedurally barred, and he has not shown that any exception applies to excuse his procedural default.   The legal principles on this point are clear:

> If anything is settled in habeas corpus jurisprudence, it is that a federal court may not grant the habeas petition of a state prisoner "unless it appears that the applicant has exhausted the remedies available in the courts of the State; or that there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b)(1). To satisfy § 2254's exhaustion requirement, a petitioner must present the substance of "the same federal constitutional claim[s] that he now urges upon the federal courts," *Turner v. Artuz*, 262 F.3d 118, 123-24 (2d Cir.2001), "to the highest court in the pertinent state," *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir.1990).
>
> When a claim has never been presented to a state court, a federal court may theoretically find that there is an "absence of available State corrective process" under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile. In such a case the habeas court theoretically has the power to deem the claim exhausted. *Reyes v. Keane*, 118 F.3d 136, 139

---

[27] *See*, Footnote 14.

(2d Cir.1997). This apparent salve, however, proves to be cold comfort to most petitioners because it has been held that when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claims procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

***

Dismissal for a procedural default is regarded as a disposition of the habeas claim on the merits.  . . .  For a procedurally defaulted claim to escape this fate, the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (*i.e.*, the petitioner is actually innocent). *Coleman*, 501 U.S. at 748-50, 111 S.Ct. 2546 (1991).

*Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d Cir. 2001).

As mentioned earlier, a Section 2254 habeas petitioner must *properly* exhaust his claims in state court before raising them in federal court:

Under § 2254's exhaustion requirement, 28 U.S.C. § 2254(b), (c), each argument advanced in a federal habeas petition must first have been exhausted through state remedies—that is, presented to the state's highest court, *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir.2005). The petitioner must have "fairly apprised" the state court of the factual and legal premises of the federal constitutional claim. *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir.1991). In New York, a defendant seeking further appeal in a criminal case must apply for leave to appeal by letter application to the Court of Appeals. N.Y. Court Rules § 500.10(a) (current version at N.Y. Court Rules § 500.20(a) (2005)).

*Harris v. Fischer*, 438 F. App'x 11, 13 (2d Cir. 2011).

However, a petitioner cannot properly exhaust a claim by raising it for the first time in a discretionary motion for leave to appeal (unless the motion is granted and the claim is addressed on the merits), let alone in a motion for reconsideration of an order denying such a request. *See, Andujar v. Kickbush*, No. 918CV0521GLSDEP, 2019 WL 2746599, at *5 (N.D.N.Y. June 10, 2019) ("Unfortunately for petitioner, it is well-established that

presentment of a claim for the first time on an application for discretionary review, such as in a motion for leave to appeal to the New York Court of Appeals, is insufficient to exhaust the claim unless discretionary review is granted and the claim is addressed on the merits. Here, petitioner's application for leave to appeal to the New York Court of Appeals was denied and, thus, his claim was not addressed on the merits.") (collecting cases, citations omitted), *report and recommendation adopted*, No. 918CV521GLSDEP, 2019 WL 2743574 (N.D.N.Y. July 1, 2019); *see also, Allen v. Artus*, No. 6:17-CV-6074 CJS, 2020 WL 6785498, at *12 (W.D.N.Y. Nov. 18, 2020) ("[R]aising a federal claim for the first time in an application for discretionary review to a state's highest court is insufficient for exhaustion purposes." *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004)[.]") (other citation omitted).

Here, the arguments comprising the second claim of Richardson's habeas petition are unexhausted and procedurally defaulted, since Richardson raised them for the first time in his *pro se* application to the New York Court of Appeals for "reargument and reconsideration," which the Court of Appeals denied. Richardson, though, does not acknowledge that the claims are unexhausted, and consequently has not made any attempt to show that an exception applies to the exhaustion requirement. Nor does the Court find that any exception applies. Consequently, the claims are denied.

Moreover, even if the claims were not procedurally barred, they lack merit. More specifically, to the extent that Richardson claims that the sentencing error concerning restitution automatically invalidated the constitutionality of his guilty plea, his argument lacks merit for the reasons already discussed. That is, he has not shown that if he had known County Court was going to require him to pay restitution, it would have made any difference in his decision to enter a plea. Additionally, the Appellate Division corrected

the sentencing error, and Richardson has not shown that the Appellate Division's decision on that point, to vacate the restitution order and otherwise affirm his conviction and sentence, violated his federal constitutional rights or otherwise requires that his conviction be vacated.

CONCLUSION

The application under 28 U.S.C. § 2254 is denied.  Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  The Clerk of the Court is directed to close this action.

So Ordered.

Dated: Rochester, New York
        August  4, 2023

ENTER:

CHARLES J. SIRAGUSA
United States District Judge